CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, <br><br> Plaintiff, <br><br> v. <br><br> IMAGE GUIDED PAIN MANAGEMENT, P.C., JOHN MILLIGAN MATHIS, M.D., and ROBERT FRANCIS O'BRIEN, M.D., <br><br> Defendants. | Civil Action No. 7:13-cv-00499 <br><br> **MEMORANDUM OPINION** <br><br><br> By: James C. Turk <br> Senior United States District Judge |

Plaintiff Medical Mutual Insurance Company of North Carolina ("Medical Mutual") brought this action for a declaratory judgment regarding its duty to defend a series of lawsuits brought against Defendants Image Guided Pain Management, P.C. ("IGPM"), Dr. John Mathis, M.D. ("Mathis"), and Dr. Robert O'Brien, M.D. ("O'Brien" and collectively, "the Defendants").[1] Medical Mutual is currently defending the underlying suits under a reservation of rights. Pending before the court is the Defendants' Motion to Dismiss. ECF No. 8. The motion has been fully briefed, oral argument was heard on February 25, 2014, and it is now ripe for disposition.

The issue before the Court is whether, under Virginia law, Medical Mutual owes a duty to defend the underlying lawsuits brought against the Defendants. Medical Mutual argues it owes no duty to defend because all claims asserted in the underlying lawsuits

---

[1] Although the Complaint is not entirely clear, Medical Mutual has clarified that it does not seek any declaratory judgment as to its duty to indemnify at this time. ECF No. 13 at 28 ("Medical Mutual's action is solely confined to seeking a determination as to its duty to defend its insureds in the underlying lawsuits.").

1

fall within certain exclusions to liability contained within the insurance agreement ("the policy" or "the insurance policy") between Medical Mutual and the Defendants. The Defendants assert that Medical Mutual has a duty to defend them in the underlying actions because each complaint contains at least one claim which does not fall under any liability exclusions in the insurance policy.

For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss.

I. **FACTUAL BACKGROUND**

A. **Underlying Actions**

IGPM is a Virginia professional corporation with its principal place of business in Roanoke, Virginia. Mathis and O'Brien are both physicians who work at IGPM in Roanoke as diagnostic radiologists. All three Defendants are named defendants in a series of lawsuits that seek to recover for personal injuries or deaths that resulted from the injection of an allegedly tainted drug, methylprednisolone acetate, which the Defendants purchased from New England Compounding Pharmacy, Inc. ("NECC") and administered to individual patients. ECF No. 1. Although the underlying actions consist of several different versions of complaints, Medical Mutual divides the suits into two categories based upon the types of claims made against the Defendants.

The first category of lawsuits, which Medical Mutual refers to as "Group A," contains suits filed by 19 individual plaintiffs. ECF No. 1, ¶ 15.[2] In relevant part, these

---

[2] Group A plaintiffs include Sandra F. Artis; Robert D. Bender, Executor of the Estate of Ralph James Irace, Jr., deceased; Dana Marlene Bradley; Ronnie Alton Brown, Jr.; Ronald T. Courtney; Trudy R. Epperly; Barbara J. Filson; Zachary Lucas Foutz, A Minor; Robert Earl Harris, Jr.; Julian D. Holbrook; Chester T. Kalinoski; Pauline R. McFarlane; Patricia S. Brown, Jenae Spicer Patsell and John D. Spicer, Co-Executors of the Estate of Louise B. Spicer, deceased; Odessa Mae Shuck; James Wirt Smith, Jr.; Randolph E. Smith; Richard A. Whitlow;

Group A plaintiffs allege the following counts against the Defendants: (1) negligence per se based upon the Defendants alleged violations of the Virginia Drug Control Act, Va. Code § 54.1-3400 et seq.; (2) common law negligence; (3) gross negligence; (4) fraud; and (5) willful violations of the Virginia Consumer Protection Act, Va. Code § 59.1-196 et seq. ECF No. 1, ¶¶ 13–14. The second category of lawsuits, which Medical Mutual refers to as "Group B," contains suits filed by five individual plaintiffs.[3] In relevant part, these Group B plaintiffs allege the following counts against the Defendants: (1) common law negligence; (2) breach of express warranty; and (3) breach of implied warranty. ECF No. 1, Ex. 3.[4]

**B.  Insurance Policy**

The Insurance Policy issued by Medical Mutual is dated January 11, 2013 and was effective from March 1, 2012 to March 1, 2013. ECF No. 1, Ex. 1. According to the Declarations Page, it is a Medical Professional Liability policy with Coverage B provided

---

Sharon G. Wingate, Executor; and Rose Mary White. ECF No. 1, ¶ 15. The Court has received and reviewed complaints from all the aforementioned plaintiffs.

Medical Mutual's Complaint also lists Thomas Douglas Goodwin and Jimmy Dale Green as Group A plaintiffs. ECF No.1, Ex. 2, ¶ 15. In a separate filing, ECF No. 18, Medical Mutual explained that neither Goodwin nor Green have filed underlying complaints. Instead, Goodwin and Green asserted written claims against the Defendants on grounds "substantially identical" to those set forth by the Group A plaintiffs. Because no formal complaints have been filed, the Court will not rule as to the Goodwin and Green complaints.

[3] Group B plaintiffs include Chance Everett Baker, Carolyn D. Fidler, Patrick O. Johnston, Basil E. Proffitt, and Ferman W. Wertz. As Defendants note in their Brief in Support of Motion to Dismiss, Medical Mutual lists Patrick Johnston as a Group A plaintiff. ECF No. 9, at 5 n.6. However, Patrick Johnston's claims are substantially similar to other Group B plaintiffs' claims, so the court will consider him a Group B plaintiff.

[4] Though all five complaints allege these three counts, the Baker, Johnston, and Wertz complaints also allege counts of fraud and negligence per se, premised on violations of the Virginia Drug Control Act.

3

to IGPM and Coverage A provided to Mathis and O'Brien.[5] In relevant part, the policy provides that Medical Mutual would pay on behalf of the Defendants "all damages that [the Defendants] shall become legally obligated to pay for an **Injury** to which the insurance applies because of a **Medical Incident**." ECF No.1, Ex. 1, at 4 (art. I, ¶¶ 2–3). The term "injury" is defined in the policy as "physical harm, mental anguish, mental illness, emotional upset or distress, sickness, disease or death, and which is neither expected nor intended by the Insured."[6] Id. at 5 (art. III, ¶ 2). Additionally, "medical incident" is defined in the policy as "an act, error, or omission arising out of or in connection with the rendering of or failure to render **Professional Services**." Id. at 6 (art. III, ¶ 4). Finally, "professional services" is defined in the policy, in relevant part, as "services requiring the use or applications of special learning or intellectual skill performed, or which should have been performed by, an **Insured** in furtherance of medical or surgical treatment or care of patients . . . ." Id. at 6 (art. III, ¶ 9(a)).

In addition to its coverage provisions, the policy contains numerous exclusions that exempt certain types of claims of damages from coverage. Medical Mutual relies upon the following four exclusions to argue that no insurance is provided for the underlying suits (and thus, no duty to defend arises):

> (c) damages arising out of or in connection with advertising, marketing, warranting (express or implied) or solicitation for **Professional Services;**
>
> (d) damages arising out of or in connection with any unfair or deceptive act or practice, anti-trust, or restraint of trade, commerce or service;

---

[5] The name on the Policy is Image Guided Therapeutics PC. ECF No. 1, Ex. 1 at 1. IGPM is listed in an endorsement as an insured under Coverage B. Id. at 46.

[6] All Defendants are included in the definition of "the Insured." Insurance Policy, ECF No.1, Ex. 1 at 5 (art. III, ¶ 3).

4

> . . .
>
> (j) damages arising out of or in connection with any **Insured's** criminal act or an **Insured's** violation of any statute, ordinance or regulation that provides for any criminal penalty whether or not there is a criminal charge, prosecution, or conviction;
>
> (k) damages arising out of or in connection with any willful, fraudulent, malicious (including malicious prosecution or abuse of process) or intentional acts or omissions, including but not limited to battery;
>
> . . .

Id. at 7-8 (art. IV, ¶¶ (c)–(d), (j)–(k)). The Court refers to these exclusions for purposes of this Opinion as the "warranty exclusion," the "deceptive acts exclusion," the "criminal exclusion," and the "intentional acts exclusion."

## II. ANALYSIS

### A. Legal Standards

This case is governed by Virginia law, as the parties agree. "It is well-settled under Virginia law that an insurer's duty to defend is broader than its duty to indemnify." Transcon. Ins. Co. v. Caliber One Indem. Co., 367 F. Supp. 2d 994, 1000 (E. D. Va. 2005). More specifically,

> [u]nder Virginia law, an insurer's duty to defend is determined by a combination of the Exclusive Pleading Rule and the Potentiality Rule. Under the Exclusive Pleading Rule, an insurer's duty to defend is determined solely by the claims asserted against the insured in the underlying action. Under the Potentiality Rule, an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the terms of the insured's policy. Thus, to determine whether an insurer has a duty to defend an insured against a suit, a court must determine whether any of the claims asserted in the suit potentially come within the policy's scope of coverage. This is accomplished by comparing (a) the policy terms defining the scope of coverage, with (b) the claims asserted against the insured as pleaded in the complaint.

5

Id. at 1000–01 (internal citations omitted). Stated differently, "an insurer's obligation to defend is broader than its obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Lerner v. Gen. Ins. Co., 219 Va. 101, 104 (1978). Thus, "an insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995). "If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense." Id.

In determining whether an insurer has a duty to defend claims brought against the insured in Virginia, the Court's first step is to determine whether the alleged act falls within the scope of the insurance policy. Transcon. Ins. Co. v. Caliber One Indem. Co., 367 F. Supp. 2d 994, 1000 (E. D. Va. 2005). In this case, the Defendants are being sued for their role in administering allegedly tainted drugs. These actions undoubtedly fall under the insurance policy's coverage provision for an "injury to which insurance applies for a medical incident." ECF No. 1, Ex. 1 at 4 (art. I, ¶¶ 2–3). Because the actions fall within the scope of the policy, Medical Mutual will only be relieved of its duty to defend if all possible claims against the Defendants fall within specific policy exclusions.

When interpreting the scope of an exclusion, the Supreme Court of Virginia has cautioned that "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220, 223 (Va. 2010) (quoting Seals v. Erie Ins. Exchange, 674 S.E.2d 860,

862 (Va. 2009)). Indeed, when interpreting ambiguous language in a policy, Virginia courts consistently construe it "in favor of that interpretation which grants coverage rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted." Id.

In order to determine whether, as Medical Mutual argues, all the claims in the underlying complaints fall within an exclusion, the Court will consider Group A complaints and Group B complaints separately.

## A. Group A Complaints

As discussed above, Group A complaints contain counts against the Defendants for: (1) negligence per se based upon the Defendants alleged violations of the Virginia Drug Control Act, Va. Code § 54.1-3400 et seq.; (2) common law negligence; (3) gross negligence; (4) fraud; and (5) willful violations of the Virginia Consumer Protection Act, Va. Code § 59.1-196 et seq. ECF No. 1, ¶¶ 13–14. In its written submission, Medical Mutual essentially argues that it owes the Defendants no duty to defend because each count falls under an exclusion for liability found in the policy.

Medical Mutual argues that violations of the Virginia Drug Control Act are punishable by criminal misdemeanor under Va. Code § 54.1-3458 and thus fall within the "criminal acts" exclusion" found in Art. IV(j) of the policy. ECF No. 1, Ex. 1, at 5 (art. IV(j)). Additionally, Medical Mutual asserts that the claims of Defendants' common law negligence essentially parrot the claims of Defendants' alleged violations of the Virginia Drug Control Act, and, therefore, all claims of common law negligence fall within exclusion IV(j) as well. ECF No. 13. In support of its claim that it has no duty to defend, Medical Mutual points to what it deems to be the broad language of the criminal acts

exclusion which excludes from coverage "damages arising out of or in connection with . . . an Insured's violation of any" criminal statute. ECF No. 1, Ex. 1 at 8 (art. IV. ¶ j). According to Medical Mutual, the allegations of negligence are "inextricably intertwined" with the allegations falling within the criminal acts exclusion and the damages for the negligence claim "allege no separate acts giving rise to separate damages." ECF No. 13 at 2. This reasoning is unpersuasive primarily because it is based on a faulty premise.

In particular, while the negligence allegations might be "inextricably intertwined" with the allegations of criminal conduct, this does not mean that no duty to defend is triggered. As noted, "an insurer's duty to defend is triggered if there is <u>any</u> possibility that a judgment against the insured will be covered under the terms of the insured's policy." Transcon. Ins. Co., 367 F. Supp. 2d at 1000-01 (emphasis added). Here, the Group A complaints include several allegations of common law negligence that could give rise to liability for Defendants and do not fall under the scope of the Virginia Drug Control Act. For instance, the Group A complaints allege that the Defendants "failed to properly inform [the underlying plaintiff] that the epidural steroid injection was an 'off-label' application of the drug at issue, not approved by the FDA for such an application." See, e.g., ECF No. 1, Ex. 2, Artis Complaint, ¶ 205(e).[7] A duty to inform patients regarding the off-label use of drugs is found nowhere in the Virginia Drug Control Act. See Va. Code § 54.1-3457. Likewise, the Group A complaints allege that the Defendants "failed to properly inform [the underlying plaintiff] of the risks and dangers associated with the injection of the drug . . . ." Artis Complaint, ECF No. 1, Ex. 2, ¶ 205(f). Once

---

[7] For ease of reference, the Court cites only to the underlying complaint of Sandra Artis. All other Group A complaints contain essentially identical allegations to the Artis complaint.

again, the Virginia Drug Control Act does not specifically mandate a "duty to inform" patients about the possible dangers of a specific drug. See Va. Code § 54.1-3457. Instead, these allegations are straightforward claims of medical malpractice and fall within the policy's coverage. Because the Group A complaints contain allegations that, if proven true, would fall within the policy and not under any exclusion of liability, Medical Mutual has a duty to defend the Defendants in the Group A lawsuits.

### B. Group B Complaints

Medical Mutual makes a similar argument as to why it has not duty to defend the Group B Complaints. Specifically, it claims that these complaints assert that defendants "breached express and implied warranties regarding the safety, effectiveness, and identity of the drug (Baker ¶¶ 89, 94)" and that plaintiffs reasonably relied upon defendants' representations that the drugs were safe. ECF No. 13 at 22. Medical Mutual further contends that these breach of warranty claims all fall within the warranty exclusion,[8] and that the negligence claims in the complaints "set forth no separate basis for recovery but instead incorporate and are dependent upon the same allegations made in support of the breach of warranty claims." Id. Thus, Medical Mutual asserts there is no potentiality of coverage and no duty to defend.

Again, Medical Mutual's underlying premise that the negligence claims are simply a recharacterization of the breach of warranty claims is inaccurate, as close scrutiny of the Group B Complaints shows this is not the case. In particular, the Group B negligence counts contain the allegation that NECC had a history of improper practices,

---

[8] As noted, the warranty exclusion excludes from coverage "damages arising out of or in connection with advertising, marketing, warranting (express or implied) or solicitation for **Professional Services** . . . . " ECF No. 1, Ex. 1 at 7 (art. IV, ¶ (c)).

including a failure to use proper sterilization practices. Based on this, the underlying plaintiffs alleged that the IGPM defendants were negligent in purchasing steroids from NECC because "[they] knew, or should have known, that its products were not reasonably safe to administer to patients." See, e.g., ECF No. 1, Ex. 3, Baker Complaint, ¶ 71.[9] Similarly, the underlying plaintiffs claim that the IGPM defendants acted "negligently and carelessly" when they "selected a compounding pharmacy to provide their medicines when they knew, or should have known, that NECC did not follow proper practices, procedures and state law for the safe manufacture of MPA." Id. ¶ 73. These allegations are separate allegations of negligence that do not rely on the breach of any warranty of professional services to establish liability.

Accordingly, the Court concludes that these allegations of negligence show a potentiality of coverage and thereby trigger Medical Mutual's obligation to defend the Group B lawsuits.[10]

---

[9] For ease of reference the Court cites only to the underlying complaint of Chance Everett Baker. The Group B complaints of Johnston, Proffit, and Wertz contain essentially identical allegations to the Baker complaint. The Fidler complaint alleges a slightly different count of negligence, claiming that the Defendants 'were negligent because they failed to use reasonable care when they designed, tested, manufactured, marketed, and sold doses of MPA." ECF No. 1, Ex. 3, Fidler Complaint, ¶ 33. This count, too, is sufficiently distinct from the breach of warranty counts, and thus the Court analyzes the Fidler Complaint. In any event, Medical Mutual has not argued that the Fidler complaint should be treated differently than the other Group B complaints.

[10] Defendants also argue that the warranty exclusion does not apply here because it excludes coverage only for warranting for "Professional Services," while the warranties allegedly made here related not to Professional Services, but to goods incidental to those services. Put differently, Defendants allege that the underlying plaintiffs "seek to hold the IGPM Defendants liable in their role as sellers of goods, not for any representation or warranty relating to the Professional Services they provided." ECF No. 14 at 14. Thus, they argue, the warranty exclusion does not apply here. In light of the Court's rulings that there are separate negligence claims triggering a duty to defend, it does not reach this issue. It also does not reach the issue raised by Defendants in their reply concerning the amended complaint in one of the underlying cases, Wingate. See ECF No. 14 at 17.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Medical Mutual has a duty to defend Defendants against the underlying lawsuits referenced in its Complaint, and thus **GRANTS** Defendants' motion to dismiss, ECF No. 8. An appropriate order shall be entered this day.

ENTER: This 15th day of April, 2014.

/s/ James C. Turk
James C. Turk
Senior United States District Judge